Good morning. Judge Tashima Fletcher-Nguyen. My name is Zaina Jafar and I represent Juanita Puolani Lee, the appellant in this case. Your Honors, this is a case where MERS, exceeding the bounds of its authority as a nominee, conducted a non-judicial foreclosure on appellant's home. This was contrary to established Hawaii state law, contrary to This court in Cervantes, Cervantes v. Countrywide Home Loans, which the appellee heavily relies upon, never expressly stated that MERS may conduct a non-judicial foreclosure in its name, acting as a foreclosing mortgagee. In fact, this court was careful to point out that a plaintiff may maintain a case against MERS where it is acting as a foreclosing mortgagee or where the plaintiff is maintaining claims against MERS based on violations of state recording or foreclosure statutes, which is exactly what the appellant has done here. You've got a jurisdictional issue, but unlike the last case that was just argued, the separate case that went back to Hawaii has now been concluded, and so final judgment's been entered there. Do you want to weigh in on the jurisdictional issues and supplement what counsel and the other case just argued? That's correct, Judge Nguyen. And this is a bit more unique than the past case because the final judgment was entered on, I believe it was January 15, 2013. And we would submit to this court that initially the May 25, 2012 order and judgment were final and appealable pursuant to 1291 and Rule 6b. It wasn't explicitly stated that it was a 54b, and as was thoroughly argued in the past, in the prior case, it was a final appealable judgment, although not explicitly stated, but notwithstanding, on January 2013, Judge Seabright did enter a final judgment disposing of the entire case, so there are no claims remaining in the district court. But assuming for a moment that we cannot treat this or will not treat this as a Rule 54b, at the time the appeal was taken, it was premature, does the fact that the judgment that the entire case got a final judgment later cure the fact that it was a premature appeal? And, Your Honor, it's not clear. This Court has not given explicit guidance, at least my research has not turned up any, as to whether or not that would cure the issue. So you've got that problem, even though it may now be final, whether it's 54b or not. Maybe my research skills, but unfortunately I was not able to find any authority from this Court that did explain that a little bit more completely. But the answer has got to be the same in both of the cases. Either it's implicitly 54b certified or it isn't. But assuming that we treat this as not implicitly 54b certified, you do have pending before this Court the appeal from the judgment entered in Hawaii, correct? That's correct, Judge Newman. And is there anything that then prevents you from taking up the issues here in that particular appeal? Not that I know of, Your Honor. Although a proper route may be consolidating the two appeals, and unfortunately that's not something I've looked into, and I apologize, but perhaps that may be the more proper avenue to consolidate them. But at this point, there are no remaining claims, and if it is interpreted by this Court that it was a 54b, then it is properly before you and this Court does have jurisdiction to hear the merits. What stage is that appeal at? It has been briefed. I believe a reply brief was just submitted, but no oral arguments have been set. Okay, so you might get another trip to San Francisco. Perhaps, which I don't oppose. Your clients might not like it. It may be a little bit costly. And if I may return to the merits of the case, unless there's any further questions on the jurisdictional issue. In Hawaii, as this Court has clearly accepted in Rei Kekauhoa Alisa, Hawaii requires strict compliance with the foreclosure statute as opposed to the substantial compliance requirement of other states. Now, the strict compliance requirement is important here because MERS did not establish that it was a proper mortgagee, successor, or a person otherwise authorized to foreclose under a power of sale. I think they were properly authorized unless the bankruptcy proceeding gets in the way. Exactly, Your Honor. And Judge Seabright in the United States District Court for the District of Hawaii in Deutsche Bank v. Williams handled a very similar case with similar issues, albeit it was a judicial foreclosure. Now, judicial foreclosure is going to be very different because then you come under the automatic stay problem. And here, this is a nonjudicial foreclosure. That's correct. But the same rationale should apply where homeowner mortgagors need to have some sort of recourse where there is a wrongful foreclosure or else there would be no means to defend against an alleged wrongful foreclosure. You see, on the merits on that question as to what does a bankruptcy proceeding do when we have a nonjudicial foreclosure, that one strikes me as an interesting bankruptcy problem. And maybe we don't have any bankruptcy experts in the room. I certainly don't claim any expertise myself, although I've written a lot of opinions that bankruptcy judges have necessarily and reluctantly treated as law. But it strikes me as possible that if there was an authorization given by AGIS before the bankruptcy to MERS to proceed as its agent in a nonjudicial foreclosure, we then get bankruptcy file, we then get a trustee appointed. The trustee does nothing to interfere with the previously granted authority given by AGIS in its nonbankrupt state. MERS then acts perfectly in accordance with the interests of the bankrupt state. It strikes me as unlikely that under bankruptcy law that what MERS did would be disavowed in the bankruptcy proceeding. If I may first issue a disclaimer, I am far from a bankruptcy expert. However, the AGIS, the original lender, was in bankruptcy. It was in bankruptcy when? That was on August 2007, I believe. Correct me if I'm wrong with this narrative. My understanding of the narrative is that MERS was authorized by AGIS to act as its agent for purposes of foreclosure before the bankruptcy filing. Is that right? If I may correct that statement, MERS was authorized as a nominee to act on behalf of AGIS. It was not authorized to foreclose. It was not authorized to transfer. It had no beneficial or economic interest in the note. It was simply the nominee authorized to record. And this Court has actually defined the role of MERS in Cervantes v. Country Right Home Loans. Was there a point at which AGIS did authorize MERS to proceed as its agent in foreclosure? There's nothing in the record to suggest that, Your Honor. Oh, so you're saying they never were, so the bankruptcy then is irrelevant. They did not have the authority to foreclose in their own name. They had the authority to record. They had the authority, limited authority, as a nominee. There was nothing beyond that authority that expressly ---- Their authority as a nominee is to foreclose and sell the property, correct? I would submit to the Court that it is not. Let me ask a related question now. If AGIS ---- when AGIS went into bankruptcy, didn't this ---- did AGIS send the mortgage to become an asset of the bankruptcy estate so that AGIS could no longer direct, you know, who could foreclose and who couldn't? It's not its property anymore. That's correct. That's not an issue in this case, huh? In other words, it would require the authority of the authorization of the bankruptcy trustee, wouldn't it? Because the bankruptcy trustee controls the property of the debtor. That's correct. It did become ---- it did become a part of the bankruptcy estate. And did the trustee authorize the foreclosure? There was no authority that I know of, no, Your Honor. Unless AGIS transferred the mortgage before the bankruptcy filing, so then it doesn't become part of the bankruptcy estate, which is what I thought happened in this case. The assignment and foreclosure happened after AGIS filed for bankruptcy. In fact, AGIS executed the loan. When did AGIS transfer the mortgage to Countrywide? Wasn't that before the filing of bankruptcy? Or did I get that wrong? It transferred it. No, you're correct. It transferred it to bankruptcy, I believe, two days before it filed for bankruptcy. So how did it become part of the bankruptcy estate? Because it's a preferential transfer, huh? Do we have a rule on preferential transfer questions? Or are we talking in code? You know, we're all talking about bankruptcy, and I don't want to speak for anybody else, but I don't know too much about it. Judge Tsushima, I'm in your shoes right now. Just the word bankruptcy scares me. It was transferred two days before AGIS filed for bankruptcy. However, the foreclosure and any assignment that MERS claims authority under happened after AGIS was in bankruptcy. So I would submit to the Court that it was in violation of the bankruptcy estate. What happened after, and what MERS purported to do after, on behalf of AGIS, who was in bankruptcy, MERS acted in its own name on behalf of AGIS, and AGIS at that point was in bankruptcy. You know, this is a problem that does get tangled up in bankruptcy. There's a rule that allows the recovery of assets that are transferred away from the because it has the possibility of preferring certain creditors over others. And if it would have happened only two days before the filing, the trustee was absolutely entitled to ask that that asset be transferred back, or to investigate to see whether it was transferred for fair value. Do you have any idea whether anything like that happened? Was it brought back into the estate as a preferential transfer? There's nothing in the record that would suggest that. Okay. I see that I have four more minutes. I'd like to reserve that time for rebuttal. I'm sorry, three minutes and 45 seconds. The time is all yours on rebuttal. Thank you so much, Your Honors. Good morning, Your Honors. Thomas Heffron here today on behalf of Countrywide Bank and MERS in this matter. I guess I'll start off with a jurisdictional question for the Court. It's our position in this case that, as we said in the briefs, that there was no jurisdiction because there were still claims left to be resolved. But it's our position that at this point, since all of the claims have been resolved, that that perfects the appeal. We don't think there's a jurisdictional concern. And this is why. Can you give a case law that says that premature appeal can be cured in this fashion? I think it's consistent with FRAP 4, which says that when you file an appeal before either the entry of the judgment or the disposition of other matters which need to be resolved before the appeal is timely, that it's treated as timely once those issues are resolved. And what happens in the JPML is the JPML, when it issued the order, it remanded claims to the Hawaii District Court and it sent the bulk of the claims to Arizona. The Arizona claims were resolved in the MDL. That's what's at issue here. The Hawaii claims were not resolved until this matter was in the middle of being briefed. With the resolution of those claims then, I agree with plaintiff's counsel that with the resolution of those claims, all of the issues now have been resolved. It is not a situation, I would suggest to Your Honors, where there was any need to enter any additional order in order to perfect that. And I frankly don't question that counsel faced with something called a judgment in this case, and that's what they had. A judgment was officially entered that they said, I better take an appeal from this order. What happened in this case, and it happened actually in Rollins as well, is somewhat akin to what you see oftentimes, which is if you have a multiple defendant case, sometimes a defendant will win on summary judgment, but he has to, without a 54B, he sort of has to hang around until everybody else gets resolved. But when everybody else gets resolved, then his appeal, or the time for appeal, springs up because the final judgment enters. And that sometimes can be a year or even more. And so what should have happened here, frankly, although again I don't question counsel's decision in terms of protecting their client, but what really should have happened here is they just should have waited. And then when the decision in Hawaii was entered, that disposed of all claims in the federal courts, and then at that point the 30-day period to appeal from the MDL order began. Similarly, I would say in Rollins, if I can trample on Mr. Brochin's case, I would say in Rollins that also could have been done. That could have waited. I don't believe that the case would have traveled over to Georgia. Nothing could ever leave the MDL. Once it got to the MDL, nothing could ever leave the MDL under the JPMO rules without an order of remand from the JPML. Now, of course, all that was left in our case, for example, was an order of dismissal. Kennedy. Construe the original order, which is somewhat ambiguous, itself is remanding some claims. It did. So, but in order to move the remaining claims that were in the MDL, in order to move them, in my instance, to Hawaii, or in the Rollins case to Georgia, you need another order remanding. Only the MDL can, only the panel can tell the district judge handling the MDL that he has to give up what he has and give it back to the original court. And in this case, there was no order that said, from the MDL panel, that said to Judge Teelborg, take the dismissal in Lee, send it off to the District of Hawaii so that they have one case consolidated together and can enter a final judgment. So, therefore, we had two cases pending, basically split in half. And until such time as the second of the two was completely resolved, the appeal period did not begin for this particular case. Are you involved in the second case? Yes, we are. Yes, we are. Yes, we are. Is it correct, as your opponent said, that that case is fully briefed? That's correct as well. Yes. How long ago was the reply brief filed? I think it was maybe 60 days, 45 days. Maybe this panel needs to come to Hawaii to spare everybody the trouble. And I would not object to that. In any event, so while our case is somewhat different from Rollins, I think the issues are somewhat the same. And in any event, consistent with FRAP 4, the resolution now of all active issues has resolved this case and sort of rendered this appeal timely. On the merits, the main claim in this case, in fact the only claim that the plaintiffs in their opposition to the motion to dismiss talked about, was this idea that somehow my clients had violated the Hawaii foreclosure statute that limits the down payment at the day of sale, that we had violated the Hawaii foreclosure statute by saying pay 10 percent down payment and then pay the rest within 21 days. The plaintiffs took the position that that really is requiring more than 10 percent in down payment because there's essentially not very long between the down payment time, the sale time and the time of the ultimate payment of the whole amount. And anyway, so that is a question of Hawaii foreclosure law. And one of the things that's helpful is the court saw in the brief has been decided three separate times by the district court in Hawaii that this statute, which restricts the size of the down payment in order to encourage bidding, this statute only deals with the down payment required at the time of sale. It does not deal with the second question about how quickly after the sale you can  Sotomayor, I have to say I'm more troubled by the question of whether MERS was properly authorized to sell and do a nonjudicial foreclosure and then the consequence on what I view as the authorization in the mortgage document itself. Do you have an effect on that of the bankruptcy? Sure. What do we know about, for example, apparently the transfer of the loan from HS just before the filing? That's correct. Are you familiar with the bankruptcy proceeding? Familiar enough and familiar with the transfer. So what happened in the bankruptcy proceeding? The bankruptcy was a Chapter 11, which means it's an operating bankruptcy. In a Chapter 11, typically what happens is the debtor Is that with the debtor in possession? Yes, that's correct. The debtor is put in possession and the trustee essentially is in charge of making sure the company operates, but typically the managers of the company remain in place. There's typically a first day order, which among other things, and I can't speak for what happened here, but I have been involved in Chapter 11 bankruptcy. So typical first day order, which basically says within certain parameters, keep running your business. The idea, of course, in Chapter 11 is you're hoping it will continue to run forever. And so you would expect that when you're talking about a mortgage lender and someone who owns loans and also is a mortgagee, that the presumption, and again I'm just projecting, I don't know, presumption is that the company was told and, in fact, was allowed by the trustee to continue to do its normal course of business, to foreclose, to sell loans, to buy loans, things like that. What actually happened in the bankruptcy ends up, we believe, to be irrelevant because, as counsel conceded, this loan was sold two days before the bankruptcy filing. Judge Toshima mentioned that very well could be an avoidable transfer, avoidable preference. And I'm not aware that there was any suggestion it was avoidable preference. It wasn't. It hasn't been challenged as such. In a bankruptcy proceeding. I'm not aware one way or the other whether it has been. I just don't know. It might have been. I just don't know. It might have been. It might not have been. When you're talking, however, about the case, remember this case, of course, is a challenge to say the foreclosure was wrongful. And they're trying to, the plaintiffs have a burden to plead a reason why it was wrongful. All they pled was that there was a bankruptcy, and they're now conceded that there was a transfer of the asset prior to the bankruptcy. So they've provided no substance for suggesting that the bankruptcy had some influence on the wrongful nature. They have not given us any detail, but we can imagine why this could have caused a problem. If there had been, if you can say that there had been avoidable preference, it possibly was avoidable preference, and that, in fact, that had been avoided. The case before the filing smells like avoidable preference. Within 90 days, I believe the rule is that anything within 90 days is presumptive because you have to look and see. Of course, on the other hand, in many, many Chapter 11s, there's no avoidable preferences. It's just a question of, you know, people realize we're really not going to make it without reorganization yet. But the fact that it was transferred beforehand is not in the complaint anyway. That's not in the complaint at all. We know that from outside the complaint. That's correct. Now, I would say, though, on the bankruptcy issue, very important point, and this goes to actually several of the issues they raised. The Lee case in the Supreme Court of Hawaii said that nonjudicial foreclosures are a matter of contract. Whatever the parties have agreed to with respect to the contract is to be governed In addition to the extent that Hawaii statutes provide any requirements or limitations, they apply as well. So in this instance, in the contract, Ms. Lee granted to MERS the power of sale and said, you shall have the power of sale as nominee for the lender and its successors and assigns. And the statute does not provide any requirement that there be an examination of the status of the noteholder, the status of authorization between the noteholder and the mortgagee, or in this case, MERS nominee. And courts have, and there's a number of cases cited in our brief, courts have said in Hawaii, and this is consistent with many states, that if the statutory power of sale and the contractual power of sale does not say that there needs to be some prove-up or some explanation of whether, in fact, the noteholder has default and the contractual basis for it, then there's no requirement, nor should the courts go and look, about, look behind why the mortgagee is, in fact, foreclosing. If, in fact, and so Your Honor's raising the issue of bankruptcy, as did the plaintiffs. But if you could look at the bankruptcy, notwithstanding the fact that the statute and the contract doesn't say that it's relevant, then you would look at other person up and say, please foreclose. Was there some kind of agency contract? Again, outside the bankruptcy. So in other words, the bankruptcy issue being raised by the plaintiff is no different from the other issues being raised in other foreclosure challenge cases in Hawaii, which is the plaintiffs would like to say, I need more proof. I need proof that the noteholder authorized the mortgagee. It's only one species of this authorization question, and the cases are clear that the authorization question is not one that needs to be resolved because, as the Lee Supreme Court case says, you look at the contract and you look at the statute. Nowhere in the statute is there a question raised as to find out whether there's authorization on the part of the noteholder. And Judge Seabright has an opinion on this, and there's others cited in the briefs. And that really takes care of other challenges that they have, including the challenge that they say that, you know, MERS does not come up with the note. There's really a balance made in the Lee case and by the Hawaii statutes that says all you have to do is you have to be a mortgagee or someone authorized by the contract to foreclose. There has to be a default. And then, of course, there's all sorts of procedural protections of notice and publication and sale and all that kind of stuff. And there's no question here that MERS is named as a power of sale, in the power of sale, with authority to foreclose. And there's no dispute, and it certainly didn't allege, that they weren't in default. And that gets us to the point of saying there's no wrongful foreclosure as a matter of law. It's not surprising, then, that when they opposed the motion to dismiss, their only argument was this down payment statute. I mean, their only argument was whether, in fact, there were the last very end of the process, the procedural protections. Kennedy did not make this argument about whether or not MERS was properly designated as the agent by AGIS? They made it in their complaint, but when we made our motion to dismiss, their response was, and it was actually very interesting, their response was, you know, what is this case about? What this member case is about, quote, what this member case is about, is specifically in their motion to dismiss opposition. And Judge Taylor specifically addresses that. So it's not as though this issue snuck up on him. He saw it, and he resolved it. Right or wrong, he resolved this bankruptcy issue. Correct. What happened was it was in the motion to dismiss because it was in the complaint. It was in the complaint. It was in the motion to dismiss. We filed it. Yes. I have to say, given that Judge Talborg addressed it and resolved it, I have trouble seeing it as waived. Well, I think part of it, why I'm raising the issue, is just to demonstrate that there was a recognition, because at that point they knew that we had, or actually maybe not at that point, but before the argument, they knew that the loan actually had been transferred away prior to the bankruptcy. But in any event, in this instance, their focus was really on this statute. Yes, Judge Talborg decided both the issue of whether you had to show the note and said no, it's not in contract, not in the statute, so authorization is not an issue, therefore, wrongful foreclosure doesn't state a claim, and also dealt with the issue regarding Aegis. And one of the things he said, which actually echoes for today, is it's speculative as to whether the bankruptcy did affect anything. And so his perspective, although he didn't go into it from the standpoint of Rule 8, I would suggest, since he said it was speculative, was that there wasn't enough substance here to explain why there should be a concern about the Aegis bankruptcy. And he also said that to the extent that there was an injury, to the extent anything went wrong about authorization, the person who was harmed was the trustee if they just, you know, had not authorized. On the estate, perhaps. For example. And in any event, so that's a, you know, that's a, really the substance of the appeal. I would just, last point, and then I'll sit down quickly. This argument that they raised in the brief that MERS was not authorized because it's somehow qualifies as a mortgagee, that's something brand new. And so it's, and that's something that's been waived. And we talk about that in our brief. And it's, and the other thing is, it really is not substantial. MERS is named with the power of sale. And under the Hawaii statute 667-5, which has actually since been repealed, says all you have to be is, among other things, somebody who's been authorized. Thank you, Your Honor. Thank you, Your Honor. Just one point. Hawaii does say that all you have to be is the mortgagee, the successor, or a person authorized to so act. So we are not submitting to this court that we need to see the note. We are just submitting to this court today that we need to see that MERS   We are not submitting to this court that MERS establishes the status quo. We establish that they are the mortgagee, the successor, or a person otherwise so authorized to act. And that is not present in the record here today or in any of the briefings presented to this court. What about the mortgage papers that seem to me explicitly state that MERS has authority to sell and foreclose? Doesn't that constitute authorization to act? On page 22 of the excerpts of record in the mortgage, it says MERS Okay, hang on a second. Supplemental 22 of excerpts. Sorry, that may have been the wrong page. It was in the mortgage. One second. No, it's not in 22 of ER, but it's maybe somewhere else. It's on page 29 in the complaint. Okay, I've got the complaint. The beginning of the complaint is page 29. Okay, so where am I supposed to look? I apologize. My record is incomplete. In the complaint, we cite to the mortgage, and it specifically defines MERS's role as a nominee. And it states that it's a separate corporation that is acting solely as the nominee for the lender and the lender's successors and assigns. Now, their role as a nominee, as I previously stated, does not Do we have a copy of the actual mortgage document attached to the complaint? I mean, is the judge allowed to look at the actual mortgage document for purposes of 12b-6 dismissal? There is no actual document, no, Your Honor. The mortgage was not attached. Oh. So the judge is in the dark as to what the mortgage actually said, as to whether or not MERS actually was authorized by the mortgage to sell and to foreclose? I apologize. I do not have it in front of me. It was on page 21 in the district court below, but I do not have the complete copy of it. I've got a copy of the mortgage here in the ER. What status does it have? Was it attached to the complaint? It should have been, Your Honor. So I do have the mortgage. Okay. I can look at the mortgage. Okay. On the second page in paragraph C, it states, MERS is a mortgage electronic registration system incorporated as a separate corporation that is acting solely as a nominee. So what page are you reading from? I'm sorry. The second page of the mortgage, first paragraph, paragraph C. Your Honor, I would simply state that their role as a nominee does not empower them. It does not augment their authority in any way to act as the foreclosing mortgagee. And as this court has been careful to point out, they are not authorized to complete a foreclosure in their own name, and that is what we are arguing today. It is. Okay. Now, I'm on page 52 of the excerpts of record. The first full paragraph on that page, the paragraph that begins, Together with, in big capital letters, at the end of that paragraph, it says, MERS, as nominee, has the right to exercise any or all of these interests, including but not limited, the right to foreclose and sell the property. Not in their own name on behalf of a lender that was in bankruptcy. Well, that's the bankruptcy. But absent the bankruptcy, it sounds as though they've got that power. Not in their own name. They were acting on behalf of a lender. Well, that's what it says. MERS, as nominee, of lender and lender's successors and assigns, has the right to exercise any and all of these interests, including but not limited, the right to foreclose and sell the property. That sounds to me as though it's been designated or authorized and signed that power within the meaning of a Hawaii statute. In a limited way. In that power, though, there has to be strict compliance with the foreclosure statute. So if they are acting as the mortgagee, then there has to be proof that they have the authority to do so. Thank you, Your Honor. Thank you very much. Thank both sides for their arguments. Mortgage electronic system litigation. Lee v. MERS 12-16457 now submitted for decision. Thank you.
judges: Tashima, Fletcher, Nguyen